Baby DOE, John Doe, Jane
Doe and Sibling Does

v.

METHACTON SCHOOL DISTRICT, Gerald Raske, The Philadelphia School District, Michael Giamo, John Klock, J. Russell McConnell and Gregory DiFonzo.

Civ. A. No. 94–CV–0244.

United States District Court,
E.D. Pennsylvania.

March 16, 1995.

Stuart R. Silver, Bernstein, Silver, & Gardner, Philadelphia, PA, for plaintiffs.

Amy B. Ginensky, Jacquelyn J. Fatula, Dechert Price & Rhoads, Philadelphia, PA, for movants Philadelphia Newspapers, Inc.

Eileen Epley Wiggons, Philadelphia, PA, for defendant, Gregory DiFonzo.

Andrew S. Rosen, Asst. General Counsel, The School District of Philadelphia, Philadelphia, PA, for defendants Philadelphia School Dist. and Michael Giamo.

Dennis J. O'Leary, White and Williams, Philadelphia, PA, for defendant John Klock.

Joseph T. Bodell, Jr., Louis Bove, Swartz, Campbell & Detweiler, Philadelphia, PA, for defendant Gerald Raske.

Joseph F. McNulty, Jr., Post & Schell, Philadelphia, PA, for defendant McConnell.

Andrew A. Borek, John M. Donahue, Robert R. Harris, Harris & Silverman, Philadelphia, PA, and Rosemary Mullaly, Curtin & Heefner, Doylestown, PA, for defendant Methacton School Dist.

## MEMORANDUM

JOYNER, District Judge.

Defendant Methacton School District, and Defendants Gerald Raske, John Klock and J. Russell McConnell (the Methacton Defendants), each of whom is a current or former employee of the Methacton School District, move this Court for dismissal of all the claims against them in Plaintiffs' Amended Complaint. This motion is based on Federal Rule of Civil Procedure 12(b)(6); Methacton Defendants assert that Plaintiffs have failed to state claims for which relief can be granted.

### *FACTUAL BACKGROUND*

The facts underlying this litigation are tragic. According to the Amended Complaint, and largely conceded by the Methacton Defendants, in December, 1992, Defendant Gregory DiFonzo was a music teacher at the Shawmont Elementary School within the Philadelphia School System. At that time, Plaintiff Baby Doe was a nine-year-old girl who was a student of DiFonzo's. One day in December, DiFonzo brought Baby Doe to the band room and sexually abused her. He has since pleaded guilty to the crimes of involuntary deviate sexual intercourse, indecent assault, corrupting the morals of a minor, sexual abuse of children, endangering the welfare of a minor, and possession of pornographic materials (a videotape he made of himself abusing Baby Doe).

In addition to suing the Philadelphia School District, Michael Giamo (Director of Philadelphia's Music Department), and DiFonzo, Plaintiffs have sued the Methacton Defendants under 42 U.S.C. § 1983 and for negligence under Pennsylvania common law.

Plaintiffs' claims against the Methacton Defendants are based on events that took place in the late 1970s. From 1970 through 1979, DiFonzo was employed by the Methacton School District as a music teacher. In 1976, DiFonzo began a romantic relationship with a twelve-year-old girl who was his student. This relationship continued for three years, and had at least some physical dimension, although its extent is unknown.

In 1978, other students and teachers had become suspicious that an inappropriate relationship existed between the two. This suspicion was confirmed when the girl's parents discovered love letters between the two. Her parents reported the letters and relationship to Defendant Vice–Principal J. Russell McConnell. He in turn, presumably informed Defendant Principal John Klock, because Klock warned DiFonzo not to spend any more time with the child, nor let her stay after school with him. When DiFonzo ignored this warning, Klock gave DiFonzo a written warning that he typed and delivered himself.

Nonetheless, DiFonzo did not stop seeing the girl, and for months they continued to spend lunch hours alone in the band room. Finally, in March of 1979, DiFonzo arranged for both to be excused from school, allegedly because of illness. According to the Amended Complaint, they "drove around in DiFonzo's car, parked and engaged in petting." Amended Complaint ¶ 41.

The next day, DiFonzo was called to the office of Defendant Gerald Raske, the Methacton School Superintendent. There, Raske and Klock confronted DiFonzo, and DiFonzo admitted the incident. Raske gave DiFonzo a prepared resignation letter, ready to be signed, that indicated that DiFonzo was resigning for "personal reasons." *Id.* at ¶ 45. They told DiFonzo that if he signed the

letter; he could avoid an investigation and suspension. DiFonzo signed the letter, and thereby terminated his employment with the Methacton School District. Neither Raske nor Klock notified anyone of the abuse, or placed any indication of the true reason for the resignation in any Methacton School District files. *Id.* at ¶ 76.

Three weeks later, DiFonzo applied for a position as a music teacher with the Philadelphia School District. The Philadelphia School District allegedly requested a recommendation for DiFonzo from the Methacton School District, and the Methacton School District responded that DiFonzo's service had been "satisfactory," and gave no indication of any potential pedophilic problems. *Id.* The Philadelphia School District subsequently hired DiFonzo.

According to the Amended Complaint, shortly after hiring DiFonzo, Defendant Michael Giamo, Director of Music for the Philadelphia School District, learned of the events in Methacton from his brother, Louis Giamo, who had been DiFonzo's supervisor at the Methacton school. Michael Giamo confronted DiFonzo, who admitted the abuse. According to the Amended Complaint, Michael Giamo did nothing in response to the information. Almost fourteen years later, when DiFonzo was still an employee of the Philadelphia School District, he sexually abused Baby Doe.

### DISCUSSION

### 1. STANDARD OF REVIEW

■ In considering a 12(b)(6) motion, a court must primarily consider the allegations contained in the complaint, although matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint may also be taken into account. *Chester County Intermediate Unit v. Pennsylvania Blue Shield,* 896 F.2d 808, 812 (3d Cir.1990).

■ In ruling upon such a motion, the Court must accept as true all of the allegations in the pleadings and must give the plaintiff the benefit of every favorable inference that can be drawn from those allegations. *Schrob v. Catterson,* 948 F.2d 1402, 1405 (3d Cir.1991); *Markowitz v. Northeast Land Co.,* 906 F.2d 100, 103 (3d Cir.1990). A complaint is properly dismissed only if it appears certain that the plaintiff cannot prove any set of facts in support of its claim which would entitle it to relief. *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir.1988).

### 2. COUNT ONE—§ 1983 (POLICY, PRACTICE AND CUSTOM)

Plaintiffs' Amended Complaint alleges that the Methacton Defendants instituted a policy, practice or custom of deliberate indifference to Baby Doe's constitutional rights, pursuant to which the sexual abuse of Baby Doe by DiFonzo occurred. They argue that when the Methacton Defendants permitted DiFonzo to resign for "personal reasons," gave DiFonzo a satisfactory recommendation when the Philadelphia School District inquired, and made no reports to Children and Youth Services,[1] that this permitted DiFonzo to be in a position to further abuse minor children like Baby Doe.

■ The Methacton Defendants have moved for summary judgment on this Count. They argue that under *Stoneking v. Bradford Area School District,* 882 F.2d 720 (3d Cir.1989), *cert. denied,* 493 U.S. 1044, 110 S.Ct. 840, 107 L.Ed.2d 835 (1990), a plaintiff must show that a policy, procedure or custom of the state caused the injury, and that the state acted with deliberate indifference to the likelihood of a constitutional deprivation. *Id.* at 730; *Black v. Indiana Area Sch. Dist.,* 985 F.2d 707, 712 (3d Cir.1993). In addition, the wrongdoer must be a state actor. *D.R. v. Middle Bucks Area Vocational Technical Sch.,* 972 F.2d 1364, 1376 (3d Cir.1992).[2] In

---

1. Pursuant to then-Pennsylvania state law, "any person who, in the course of their employment, occupation, or practice of their profession comes into contact with children shall report or cause a report to be made in accordance with section 6 when they have reason to believe ... that a child coming before them in their professional or offi-

cial capacity is an abused child." The statute specifically included school administrators in the class of persons required to report child abuse. 11 Pa.Cons.Stat.Ann. § 2204 (1975) (repealed, now 23 Pa.Const.Stat.Ann. § 6311 (1991)).

2. Here, DiFonzo was a state actor in that he was employed by the state at the time of the abuse.

*Stoneking,* the Third Circuit held that a school district and its officials could be liable for a policy, procedure or custom of condoning sexual abuse of students by teachers. The Court found that the school's principal ignored allegations of abuse, badgered students into withdrawing their complaints, and did not place any information regarding abuse in the teacher's official files. *Id.* The Court held that these actions constituted a policy, procedure or custom of condoning sexual abuse. *Id.*

We find that this issue is appropriately divided into two parts; first, whether there was a policy, procedure or custom of reckless indifference to plaintiff's constitutional rights, and if so, whether the constitutional deprivation occurred pursuant to that policy, procedure or custom. *C.M.,* 828 F.Supp. at 1184.

■ Plaintiffs allege that there was a policy, procedure or custom in that although the Methacton Defendants were aware of DiFonzo's pedophilic predilections, they took affirmative steps to conceal those predilections from potential employers. The Amended Complaint alleges that they encouraged DiFonzo to sign a resignation letter citing "personal reasons" for the resignation, and when asked, told the Philadelphia School District that DiFonzo's employment had been satisfactory.

The facts here are in stark contrast to those in *Black,* where the principal promptly reported the allegations of abuse to Children and Youth Services, immediately removed the wrongdoer from contact with children and when asked, informed potential employers that the wrongdoer had resigned after allegations of misconduct. 985 F.2d at 712. The Third Circuit held that "[n]othing in [the principal's] handling of this incident suggests the sort of policy of condonation of sexual

abuse that would qualify [him] for *Stoneking* liability." *Id.; see also Colburn v. Upper Darby Township,* 946 F.2d 1017, 1030 (3d Cir.1991) (when police department trained employees in suicide prevention, removed dangerous implements and constantly monitored prisoner, who nonetheless committed suicide, township had not acted with deliberate indifference).

The Methacton Defendants took none of those preventive measures, even when they knew that DiFonzo was continuing to work as a children's music teacher. We find that the alleged affirmative cover-up of DiFonzo's abuse could be seen as condoning sexual abuse. We recognize that the Methacton Defendants acted promptly to remove DiFonzo from their school once they had a confession of abuse from him, but it took them a year to act on earlier indications of abuse, and their actions to prevent future abuse within their school were almost nonexistent. Accordingly, we find that Plaintiffs adequately pleaded the existence of a policy, procedure or custom that showed deliberate indifference to the welfare of Baby Doe's constitutional rights.

■ The question then is whether Plaintiffs have adequately pleaded that the alleged policy, procedure or custom was the proximate cause of Baby Doe's injuries. *C.M.,* 828 F.Supp. at 1185 ("alleged custom, practice or policy directly contributed to, led to, or caused plaintiff's injury, since the jury could find that, had defendants acted reasonably, plaintiff's injuries would not have occurred"). Plaintiffs assert that there is a "but for" relationship between the Methacton Defendant's concealment of the events behind DiFonzo's resignation and the abuse Baby Doe suffered. They allege that the Philadelphia School District would never have hired DiFonzo if it had known the real

---

*C.M. v. Southeast Delco Sch. Dist.,* 828 F.Supp. 1179, 1187 (E.D.Pa.1993) (discussing *Black,* 985 F.2d at 712). Contrary to the Methacton Defendants' argument, he need not have been employed by *them* at the time of the abuse for him to be a state actor. As Judge Gawthrop held in *K.L. v. Southeast Delco School District,* 828 F.Supp. 1192, 1199 & n. 10 (E.D.Pa.1993), we believe that to "impose an affirmative duty on school districts and school officials to protect

every student who has ever been a student in their schools from every teacher they have ever employed would be to go too far." Here, however, we do not impose an affirmative duty on the Methacton Defendants to protect Baby Doe from DiFonzo, but rather permit liability for an alleged policy, practice or custom in place during DiFonzo's employment with the Methacton Defendants.

reason he left Methacton. Then, if the Philadelphia School District had never hired DiFonzo, he would not have been in the position to abuse Baby Doe fourteen years later.

The Methacton Defendants argue that the abuse is too remote a consequence of any concealment because of the fourteen-year span between events, and because the Amended Complaint avers that the Philadelphia Defendants became aware of the Methacton events shortly after DiFonzo was hired. The Methacton Defendants argue that the temporal span makes the causation too remote and that the actual knowledge that DiFonzo was a pedophile destroyed any causational link.[3]

We find that there is a proximate relationship. As for but for causation, Plaintiffs cite several newspaper articles published at the time of DiFonzo's criminal convictions. These articles quote Rotan Lee, then-President of the Philadelphia School Board, to the effect that DiFonzo would never have been hired if they were aware of the true circumstances surrounding his resignation.

■ As for proximate cause, the Methacton Defendants' argument that Giamo's actual knowledge broke the causational chain is to no effect. That the Philadelphia School District may also have caused the injuries to Baby Doe by not acting on its alleged actual notice of DiFonzo's dangerousness does not change the alleged fact that Methacton Defendants' alleged policy, procedure or custom of deliberate indifference permitted DiFonzo to be hired by the Philadelphia School District. *See Rabatin v. Columbus Lines, Inc.,* 790 F.2d 22, 25–26 (3d Cir.1986) (second tortfeasor does not relieve first tortfeasor of liability).

We find that Plaintiffs have adequately pleaded facts to show a policy, procedure or custom of deliberate indifference to Baby Doe's constitutional rights, as well as plead-

ing causation between the policy, procedure or custom and the abuse. Accordingly, Plaintiffs' Count One states a claim for which relief can be granted.[4]

### 3. COUNT TWO—§ 1983 (AFFIRMATIVE DUTY)

Count Two of Plaintiffs' Amended Complaint alleges that the Methacton Defendants owed Baby Doe, a child attending a school in Pennsylvania, an affirmative duty to protect her against abusive conduct by public school teachers and to provide for her safety and well-being under the state-created danger doctrine. Amended Complaint ¶ 83.

The Methacton Defendants have moved to dismiss this Count against them. They argue that the due process clause does not impose an affirmative duty on a state to protect its citizens, but is only a negative limitation on a state's powers. *DeShaney v. Winnebago County,* 489 U.S. 189, 195, 109 S.Ct. 998, 1003, 103 L.Ed.2d 249 (1989). They agree that there is an exception to this general rule for state-created dangers, but assert that this case does not fall into that category.

■ The state-created danger exception arises when a state affirmatively acts to create a danger, or when a state's affirmative acts leave a plaintiff more vulnerable to harm by a third person. *D.R.,* 972 F.2d at 1373. The seminal case in the state created danger area is *Wood v. Ostrander,* 879 F.2d 583 (9th Cir.1989), *cert. denied,* 498 U.S. 938, 111 S.Ct. 341, 112 L.Ed.2d 305 (1990). There, a police officer arrested a drunk driver and impounded his car, leaving the passenger stranded on the side of the road in a known high-crime area, late at night. The passenger was raped by a stranger who offered to take her home. The Ninth Circuit held that the officer's acts made the passenger more vulnerable to harm by private persons, and the state was therefore liable under § 1983.

---

**3.** Plaintiffs argue in their Brief that this Court should ignore their allegations regarding Philadelphia's actual knowledge for the purpose of this Count because Giamo has specifically denied any knowledge in his answer. When deciding a motion to dismiss, we take the facts in the complaint as true, so whether a defendant denied them is irrelevant. Fed.R.Civ.P. 12(b)(6).

**4.** As a result of this holding, we have no need to decline supplemental jurisdiction over Plaintiffs' state law claims against the Methacton Defendants. 28 U.S.C. § 1367(a). Accordingly, we DENY the Methacton Defendants' Motion to Dismiss Count IV.

*Id.* at 588. The test is whether the state "creates plaintiffs' peril, increases their risk of harm, or acts to render them more vulnerable to the ... defendants' assaults." *D.R.*, 972 F.2d at 1374.

■ Cases interpreting the state-created danger exception have repeatedly held that a state is not liable for a state-created danger if the victim is not known and identified, but simply a member of the greater public. *Martinez v. California*, 444 U.S. 277, 285, 100 S.Ct. 553, 559, 62 L.Ed.2d 481 (1980); *Commonwealth Bank & Trust v. Russell*, 825 F.2d 12, 15 (3d Cir.1987) (people living in area surrounding prison part of public at large, not special community); *Bowers v. De-Vito*, 686 F.2d 616 (7th Cir.1982) (member of general public has "no constitutional right to be protected by the state against being murdered by criminals or madmen").

*Cornelius v. Town of Highland Lake*, 880 F.2d 348 (11th Cir.1989), *cert. denied*, 494 U.S. 1066, 110 S.Ct. 1784, 108 L.Ed.2d 785 (1990), is perhaps the case most similar to the case at bar. There, the town used prison labor around the town, including in its town hall. Evidence indicated that although only non-violent offenders were supposed to be on the work crews, in fact, several violent criminals also participated. Moreover, workers were given access to tools such as axes, machetes, knives and saws, and were supervised only by an unarmed, untrained person. *Id.* at 350. Two of the workers kidnapped a town employee who worked in the town hall and held her for three days. The Eleventh Circuit held that the town had created a danger to plaintiff because: she was a foreseeable victim of any crimes due to the fact that the town required her to work in the town hall alongside the prison work crews; because the inmates were at all times within the custody of the town; and because the town affirmatively requested the work crews from the prison, accepted those two inmates, gave them access to weapons and failed to adequately supervise them. *Id.* at 357.

It could be argued here that Baby Doe, a music student in the Pennsylvania School District, was a foreseeable plaintiff because the Methacton Defendants knew that DiFonzo had applied to work at the Philadelphia School District as a music teacher, yet did not warn the School District, and because the Methacton Defendants knew that young girls were in the population of students within the Philadelphia School District's music program. However, none of the other factors the Court relied on in *Cornelius* are present, such as control or custody of the wrongdoer, temporal proximity, or affirmative placement of the wrongdoer in the position to do the wrong. *Cornelius*, then, is not strong support for Baby Doe's claim that the Methacton Defendants created the danger to her.

We find that there are no allegations in the Amended Complaint to indicate that the Methacton Defendants were aware that they had created a danger specifically to Baby Doe, as opposed to any other girl in the Philadelphia School District. Plaintiffs, therefore, cannot make out a state-created danger claim. Because of this finding, we need not address the Methacton Defendants' additional arguments, such as whether the Methacton Defendants took any affirmative steps that caused the danger and whether the span of fourteen years makes the danger too remote.

Accordingly, we GRANT the Methacton Defendants' Motion to Dismiss Count Two against them for failure to state a claim for which relief can be granted.

## 4. COUNT FOUR—NEGLIGENCE

■ Count Four of Plaintiffs' Amended Complaint alleges that the individual Methacton Defendants were negligent in that they had a duty to exercise reasonable care in the performance of their duties/responsibilities as state employees and breached those duties, causing harm to Baby Doe.

The individual Methacton Defendants assert that they are entitled to immunity from Plaintiffs' negligence claim under the Pennsylvania Subdivision Tort Claims Act, 42 Pa. Cons.Stat.Ann. §§ 8541–64 (1982) (the Act). The Act provides that "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." *Id.* at § 8541. It also provides that "an employee of a local agency is liable for civil damages ... only to

the same extent as his employing agency."
*Id.* at § 8545.

Plaintiffs argue that the claims against the individual Methacton Defendants in Count Four are brought against them in their individual capacities, not their official capacities. They argue that the Act only protects against suits against defendants in their official capacities. In support of this argument, Plaintiffs cite *Wendy H. v. Philadelphia,* 849 F.Supp. 367 (E.D.Pa.1994) and *Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).

Defendants cite several cases to support their argument that they are immune due to the Act.[5] However, none of the cited cases specifically addresses the issue of *individual* immunity as opposed to official immunity under the Act. *See e.g., Scott v. Willis,* 116 Pa.Commw. 327, 543 A.2d 165 (1988) (school officials immune because case against them in official capacity); *Gilbert v. School Dist.,* 98 Pa.Commw. 282, 511 A.2d 258 (1986) (only school district and city were defendants); *Houston v. Central Bucks School Auth.,* 119 Pa.Commw. 48, 546 A.2d 1286 (1988) (case against school and employee dismissed; unclear whether employee sued in individual or official capacity), *app. denied,* 522 Pa. 598, 562 A.2d 322 (1989); *Henley v. Octorara Area Sch. Dist.,* 701 F.Supp. 545, 552 (E.D.Pa.1988) (because claims against officials are "in their official capacities, the claims are barred by the [Act]"); *Boyer v. Pottstown Borough,* No. 94–1716, 1994 WL 385009, 1994 U.S.Dist. Lexis 10624 (E.D.Pa. July 19, 1994) (claim against individual officer can proceed, but not claim against borough).

From our reading of both the cited cases and cases from our own research, it appears that the Act only grants immunity to government officials being sued in their official capacities. *Henley,* 701 F.Supp. at 552; *Lynch v. Johnston,* 76 Pa.Commw. 8, 14, 463 A.2d 87, 90 (1983); *Lynch v. Pierotti,* 76 Pa. Commw. 15, 17, 463 A.2d 92, 93 (1983). Here, Plaintiffs sue the individual Methacton

Defendants in both their individual and official capacities. For this reason, we find that the Act does not bar this action against the individual Methacton Defendants in their individual capacities, and DENY the individual Methacton Defendants' motion to dismiss Count IV on the basis of immunity.

### 5. QUALIFIED IMMUNITY

The individual Methacton Defendants assert that they are entitled to qualified immunity for all constitutional claims against them. The burden to show immunity is on the defendant. *Stoneking,* 882 F.2d at 726. The test for whether qualified immunity should be applied is whether:

(1) government officials

(2) performed discretionary functions

(3) that did not violate clearly established statutory or constitutional rights

(4) of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818 & n. 30, 102 S.Ct. 2727, 2738 & n. 10, 73 L.Ed.2d 396 (1982). Reasonableness is measured by an objective standard. *Stoneking,* 882 F.2d at 726.

Defendants' entire argument on this point is that the "constitutional duty to prevent a resignation of a teacher and to do a full scale investigation into allegations of misconduct so as to report the findings to anyone who might be interested in such information is a stark departure from what had been a clear duty on the part of school officials." Defendants' Brief at 11–12. Defendants cite no cases where school officials in similar circumstances have been able to assert qualified immunity.

Contrary to individual Methacton Defendants' assertions, the alleged violation of a clearly established law is not that they did not conduct a full scale investigation or prevent DiFonzo's resignation, but that they implemented a policy, procedure or custom of deliberate indifference to Baby Doe's right to

---

5. It is possible to read individual Methacton Defendants' reply brief as conceding this issue. They specifically raise the issue of immunity in their moving brief, but only in the context of official immunity. Plaintiffs responded by specifically asserting that individual Methacton Defen-

dants were being sued in their individual capacities so that the Act does not apply. In their reply brief, individual Methacton Defendants make no attempt to rebut Plaintiffs' immunity arguments, but restrict their reply to the merits of the § 1983 claims.

personal security, and did not comply with state requirements and report the admitted abuse. Amended Complaint ¶ 76.

Plaintiffs argue that under *Stoneking*, we can hold that Methacton Defendants are not entitled to qualified immunity. In *Stoneking*, the Third Circuit cited cases dating from 1952 to hold that the right to be free from an invasion of personal security was clearly established by 1980. 882 F.2d at 726–27 (citing *Rochin v. California*, 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952); *Ingraham v. Wright*, 430 U.S. 651, 673 & n. 41, 97 S.Ct. 1401, 1413 & n. 41, 51 L.Ed.2d 711 (1977)). The Court held that defendants' discretionary actions violated this clearly established right of which a reasonable person should have known. *Id.* at 730–31.

We find that individual Methacton Defendants have not rebutted the allegations in the Amended Complaint that they (1) were government officials, (2) acting with discretion, (3) that in 1979, there was a clear established right to personal security, and at least a clear statutory duty to report child abuse to Children and Youth Services pursuant to 11 Pa. Cons.Stat.Ann. § 2204, and (4) a reasonable person would have known of these rights and duties. As a result of these findings, we hold that individual Methacton Defendants have not met their burden of showing qualified immunity.

An appropriate Order follows.

### ORDER

AND NOW, this 16th day of March, 1995, upon consideration of Plaintiffs' Motion for Permission to File a Sur Reply Brief, the Motion is hereby GRANTED. Upon consideration of the Motion of Defendants Methacton School District, Gerald Raske, John Klock and J. Russell McConnell to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and responses thereto, the Motion is hereby GRANTED in PART and DENIED in PART.

The Motion is hereby DENIED as to Counts One, Three and Four.

The Motion is hereby GRANTED as to Count Two. It is hereby ORDERED that Count Two is dismissed as to Defendants Methacton School District, Gerald Raske, John Klock and J. Russell McConnell.