**Kimberly Ann SHRUM, as next friend of Justin Patrick Kelly, a minor, Plaintiff,**

v.

**Michael KLUCK, David Wade, as Superintendent of the Elwood, Nebraska, Public School District, and the Elwood, Nebraska, Public School District, Defendants.**

No. 4:97CV3366.

United States District Court, D. Nebraska.

Feb. 23, 2000.

---

Susan K. Sapp, Cline, Williams Law Firm, Lincoln, NE, Bettina J. Richardson, Rusty Hardin, Bob Galatas, Rusty Hardin & Associates, P.C., Houston, TX, for Plaintiff.

John A. Svoboda, Gross, Welch Law Firm, Omaha, NE, Stephen L. Ahl, Dean J. Sitzman, Wolfe, Snowden Law Firm, Lincoln, NE, for Defendants.

## MEMORANDUM AND ORDER

KOPF, District Judge.

This matter is before the court on the motion for partial summary judgment filed by the defendants Elwood, Nebraska, Public School District and David Wade (filing 89). For the reasons discussed below, I shall grant the motion in part and deny it in part. Upon reconsideration of the school district's previous motion for summary judgment (filing 43), I shall also grant summary judgment as to these defendants with respect to the claim brought under 42 U.S.C. § 1983, and shall dismiss them from the action.

## I. BACKGROUND

The plaintiff, Kimberly Ann Shrum ("Shrum"), brings this action on behalf of her minor son, Justin Patrick Kelly ("Kelly"), to recover damages for the sexual molestation of Kelly by the defendant Michael Kluck ("Kluck") in 1994 while Kelly was a student and Kluck was a teacher at La Porte Junior High School ("La Porte") in Texas. Kluck was formerly employed by the defendant Elwood, Nebraska, Public School District ("Elwood"). The defendant David Wade ("Wade") is Elwood's superintendent, and is sued only in his official capacity.

Shrum's second amended complaint generally alleges that Kluck was terminated by Elwood in March 1994 based on inappropriate conduct with students, but that Elwood, pursuant to a settlement agreement, agreed to keep Kluck's conduct a secret and to provide Kluck with a letter of recommendation stressing his positive qualities as a teacher. It is alleged that La Porte relied on Elwood's letter of recommendation when it hired Kluck to teach beginning in the fall of 1994.

Four "causes of action" are set out in the second amended complaint. These seek recovery of damages based on the following theories: (1) violation of Kelly's constitutional rights under 42 U.S.C. § 1983; (2) violation of Title IX, 20 U.S.C. § 1681 *et seq.;* (3) assault; and (4) negligence. The third "cause of action" for assault is alleged only against the defendant Kluck, while the other three "causes of action" are alleged as against all defendants. The pending summary judgment motion pertains to the second and fourth "causes of action," and to the plaintiff's request for special damages (*i.e.,* costs and expenses incurred by Shrum in obtaining psychological counseling and medical treatment for Kelly).

## II. DISCUSSION

Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). *See also Egan v. Wells Fargo Alarm Servs.*, 23 F.3d 1444, 1446 (8th Cir.), *cert. denied*, 513 U.S. 929, 115 S.Ct. 319, 130 L.Ed.2d 280 (1994). In passing upon a motion for summary judgment, the district court must view the facts in the light most favorable to the party opposing the motion. *Dancy v. Hyster Co.*, 127 F.3d 649, 652 (8th Cir.1997), *cert. denied*, 523 U.S. 1004, 118 S.Ct. 1186, 140 L.Ed.2d 316 (1998).

In order to withstand a motion for summary judgment, the nonmoving party must substantiate their allegations with " 'sufficient probative evidence [that] would permit a finding in [their] favor on more than mere speculation, conjecture, or fantasy.' " *Moody v. St. Charles County*, 23 F.3d 1410, 1412 (8th Cir.1994) (quoting *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir.1992), *cert. denied*, 507 U.S. 913, 113 S.Ct. 1265, 122 L.Ed.2d 661 (1993)). "A mere scintilla of evidence is insufficient to avoid summary judgment." *Id.* Essentially the test is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient

> showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## A. Title IX Claim

Title IX provides, with certain exceptions, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving Federal financial assistance...." 20 U.S.C. § 1681(a). A recipient of federal funds may be liable in damages under Title IX only for its own misconduct. The recipient itself must "exclud[e] [persons] from participation in, ... den[y] [persons] the benefit of, or ... subjec[t] [persons] to discrimination under" its "program[s] or activit[ies]" in order to be liable under Title IX. *Davis v. Monroe County Bd. of Education*, 526 U.S. 629, 119 S.Ct. 1661, 1670, 143 L.Ed.2d 839 (1999).

Sexual harassment or sexual abuse of a student by a teacher clearly constitutes "discrimination" under Title IX, *see Franklin v. Gwinnett County Public Schools*, 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992), and *Gebser v. Lago Vista Independent School Dist.*, 524 U.S. 274, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998), but a school district is liable only if it "subjected" the student to the harassment or abuse "under" its operations.

The statute's plain language confines the scope of prohibited conduct based on the recipient's degree of control over the harasser and the environment in which the harassment occurs. If a funding recipient does not engage in harassment directly, it may not be liable for damages unless its deliberate indifference "subject[s]" its students to harassment.... Moreover, because the harassment must occur "under" "the operations of" a funding recipient, *see* 20 U.S.C. § 1681(a); § 1687 (defining "pro-

gram or activity"), the harassment must take place in a context subject to the school district's control, Webster's Third New International Dictionary of the English Language, *supra*, at 2487 (defining "under" as "in or into a condition of subjection, regulation, or subordination"; "subject to the guidance and instruction of"); Random House Dictionary of the English Language, *supra*, at 1543 (defining "under" as "subject to the authority, direction, or supervision of").

These factors combine to limit a recipient's damages liability to circumstances wherein the recipient exercises substantial control over both the harasser and the context in which the known harassment occurs. Only then can the recipient be said to "expose" its students to harassment or "cause" them to undergo it "under" the recipient's programs.

*Davis*, 526 U.S. 629, 119 S.Ct. at 1672.

In *Gebser*, the Supreme Court held that "in cases ... that do not involve official policy of the recipient entity, ... a damages remedy will not lie under Title IX unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond." *Id.*, at 290, 118 S.Ct. 1989. The Court further stated that it "will not hold a school district liable in damages under Title IX for a teacher's sexual harassment of a student absent actual notice and deliberate indifference." *Id.*, at 292–93, 118 S.Ct. 1989.

█ In the present case, Shrum argues that a Title IX damages claim exists be-

cause Elwood had actual knowledge of inappropriate conduct by Kluck while he was employed by Elwood, and that Elwood was deliberately indifferent to sexual harassment by aiding Kluck, or at least not impeding his ability, to obtain employment at another school district. This argument ignores the Supreme Court's holding in *Davis* that a federal funds recipient can be held liable for damages only where it "exercises substantial control over both the harasser and the context in which the known harassment occurs." Kelly was never a student at Elwood, and, at the time of the alleged abuse, Kluck was no longer employed by Elwood. Kelly therefore was not subjected to discrimination "under" Elwood's programs or activities, and does not have an actionable claim against Elwood or Wade under Title IX.

## B. Tort Claim

█ It is undisputed that notice of Kelly's tort claim was not given to Elwood in the manner prescribed by Neb.Rev.Stat. § 13–905 (Reissue 1997)[1] before this suit was filed. "The filing or presentment of a claim under the [Political Subdivisions Tort Claims] Act is a condition precedent to commencement of a negligence action against a political subdivision." *Polinski v. Omaha Public Power Dist.*, 251 Neb. 14, 554 N.W.2d 636, 639 (1996). Noncompliance with the notice requirement has been raised as an affirmative defense by Elwood and Wade, and therefore I am compelled to grant their motion for summary judgment on this basis and to dismiss without prejudice Shrum's fourth "cause of action" as against them.[2]

---

**1.** Section 13–905 provides in relevant part: "All tort claims under the Political Subdivisions Tort Claim Act ... shall be filed with the clerk, secretary, or other official whose duty it is to maintain the official records of the political subdivision, .... All such claims shall be in writing and shall set forth the time and place of the occurrence giving rise to the claim and such other facts pertinent to the claim as are known to the claimant."

**2.** Because of this disposition, it is unnecessary to consider the defendants' additional arguments that the tort claim cannot be maintained because it is based on the exercise or performance of a discretionary function or duty, or because it arises out of misrepresentation or deceit. *See* Neb.Rev.Stat. 13–910(2), (7) (Reissue 1997).

■ Shrum's attempt to invoke the substantial compliance doctrine is unavailing because, under decisions of the Nebraska Supreme Court, that doctrine applies only to the content of a properly filed written notice. As stated in *Willis v. City of Lincoln,* 232 Neb. 533, 441 N.W.2d 846, 850 (1989):

> [F]or substantial compliance with the written notice requirements of the Political Subdivisions Tort Claims Act, within 1 year from the act or omission on which the claim is based, the written notice of claim must be filed with an individual or office designated in the act as the authorized recipient for notice of claim against a political subdivision.

*See also Schoemaker v. Metropolitan Utilities Dist.,* 245 Neb. 967, 515 N.W.2d 675, 678–79 (1994); *Woodard v. City of Lincoln,* 256 Neb. 61, 588 N.W.2d 831, 838 (1999); *Keene v. Teten,* 8 Neb.App. 819, 602 N.W.2d 29, 36–37 (1999).

### C. Special Damages

Elwood and Wade also assert that Shrum, suing as next friend of Kelly, is not the real party in interest with respect to the claimed special damages. While not alleged in the second amended complaint, Shrum offers evidence that she assigned all of her rights and interests in her claims for special damages to Kelly, on October 27, 1999 (filing 24, Exhibit 30). Because I have determined, as explained below, that Elwood and Wade are entitled to the complete dismissal of the action against them, I will deny this portion of their motion without prejudice.

### D. Section 1983 Claim

■ Elwood previously filed a motion for summary judgment (filing 43) with respect to five separate "causes of action" that were alleged against it in Shrum's first amended complaint, including a claim brought under 42 U.S.C. § 1983. That motion was denied based on a finding that genuine issues of material fact existed as to whether Elwood was deliberately indifferent to Kelly's constitutional rights and whether its conduct was a proximate cause of his injury. See memorandum and order entered on June 4, 1999 (filing 66). Subsequently, upon initial consideration of the pending motion for partial summary judgment, I indicated that it would be appropriate to re-examine the § 1983 claim before trial, and I invited additional briefing by the parties on the specific issue of whether Elwood's conduct "shocks the conscience" since the claim involves the alleged deprivation Kelly's right to substantive due process under the Fourteenth Amendment. See memorandum and order entered on January 18, 2000 (filing 118). Detailed and thoughtful briefs were submitted by Shrum and by Elwood and Wade in response to that invitation.[3] Upon consideration of those briefs, and upon reconsideration of the briefs and evidence that were previously submitted, I conclude that the § 1983 claim cannot be maintained against Elwood and Wade. On the court's own motion, therefore, summary judgment will also be granted in their favor with respect to the first "cause of action" of the second amended complaint.

■ As a political subdivision, Elwood "may be held liable for the unconstitutional acts of its officials or employees when those acts implement or execute an unconstitutional policy or custom of the subdivision. See [*Monell v. Department of Soc. Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)]; *Mettler v. Whitledge,* 165 F.3d 1197, 1204 (8th Cir.1999) ('policy' is an official policy, a deliberate choice of a guiding principle or procedure

---

**3.** Shrum has moved to strike those portions of the defendants' brief that go beyond the "shocks the conscience" issue, or, in the alternative, has moved for leave to submit a reply brief (filing 125). That motion shall be denied for the reason that the additional issues were raised and discussed at length in the briefs that were filed by the parties with respect to the original motion for summary judgment, and additional briefing on these issues would not be beneficial.

made by an official with authority, 'custom' is a persistent, widespread pattern of unconstitutional conduct of which officials have notice and subsequently react with deliberate indifference or tacit authorization)." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535–36 (8th Cir.1999). For Elwood (and Wade in his official capacity [4]) to be held liable, it must also be proven that the school district's policy or custom was "the moving force [behind] the constitutional violation." *See Mettler*, 165 F.3d at 1204; *Monell*, 436 U.S. at 694, 98 S.Ct. 2018. "That is, [Shrum] must show that the [school district's] action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the [school district's] action and the deprivation of federal rights." *Board of County Comm'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

The claimed deprivation of federal rights in this case was to Kelly's liberty interests under the Fourteenth Amendment. The difficulty with this claim is that the alleged deprivation was committed by Kluck at a time when he was not employed by Elwood. As explained in *Becerra v. Asher*, 105 F.3d 1042, 1045 (5th Cir.1997):

> Although the law is clear that physical sexual abuse of a student by a school teacher can give rise to § 1983 liability, a separate and essential element of such a claim is that the abuse occur under color of state law. "To state a claim under § 1983, the plaintiff ... must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 2254–55, 101 L.Ed.2d 40 (1988). When, as here, the alleged constitutional violation is a violation of the Due Process Clause of the Fourteenth Amendment, this requirement flows both from the "state action" component of the Fourteenth Amend-

ment and the "under color of" state law requirement of § 1983. *Doe v. Rains County Indep. Sch. Dist.*, 66 F.3d 1402, 1406 (5th Cir.1995). The "state action" and "under color of state law" requirements are identical in this context. *Id.*

The present case is similar to *Doe v. Wright*, 82 F.3d 265 (8th Cir.1996), in which it was alleged that a deputy (Wright) with the Pulaski County Sheriff's Department had forced the plaintiffs while in his custody to undress and engage in various sex acts. Included as a named defendant was Wright's former employer, the Chief of the Helena Police Department (Williams), based on allegations that he had failed to inform the Pulaski Sheriff's Department that Wright had been reprimanded for offering to fix traffic tickets for three women in exchange for sex, and had not recommended that Wright be decertified as a police officer. Evidence was presented that the Pulaski County Sheriff's Department would not have hired Wright had it known of his prior acts of sexual misconduct. The Eighth Circuit held that the district court properly dismissed the § 1983 claim against Williams, stating:

> In regards to Williams and the Helena Police Department, Wright was acting as a private actor while employed at the Pulaski County Sheriff's Department. The Due Process Clause contains no language which requires the State to protect its citizens against the deeds of private actors. *DeShaney [v. Winnebago County Dept. of Social Servs.]* 489 U.S. [189,] 195, 109 S.Ct. [998,] 1003 [103 L.Ed.2d 249 (1989)]. The failure to protect an individual against private violence does not constitute a violation of the Due Process Clause. *Id.* at 197, 109 S.Ct. at 1004.

*Id.*, 82 F.3d at 269. *See also Roach v. City of Fredericktown*, 882 F.2d 294, 297 (8th Cir.1989) (holding that "in order for munic-

---

**4.** The naming of Wade as a defendant in this action is duplicative, since a suit against him in his official capacity is equivalent to a suit against Elwood. *See Doe v. Washington County*, 150 F.3d 920, 923–24 (8th Cir.1998)

ipal liability to attach [for inadequate training], there must first be an underlying violation of the plaintiff's constitutional rights by a municipal employee (for whose actions the City is, presumably, to be held accountable)."); *accord, Gregory v. City of Rogers, supra,* 974 F.2d at 1012; *Windham v. City of Lowell,* 133 F.3d 924, 1998 WL 1348 (8th Cir.1998) (Table).

The Eighth Circuit has recognized only two exceptions to the general rule that the state has no duty to protect its citizens from the deeds of private actors: "first, in custodial and other settings in which the state has limited the individuals' ability to care for themselves; and second, when the state affirmatively places a particular individual in a position of danger the individual would not have otherwise have faced." *Doe v. Wright, supra,* 82 F.3d at 268 (quoting *Gregory,* 974 F.2d at 1010). *See also Wells v. Walker,* 852 F.2d 368, 370–71 (8th Cir.1988); *Dorothy J. v. Little Rock School Dist.,* 7 F.3d 729, 733–34 (8th Cir.1993) *Davis v. Fulton County,* 90 F.3d 1346, 1351 (8th Cir.1996); *Carlton v. Cleburne County,* 93 F.3d 505, 508 (8th Cir.1996). Neither situation is presented in this case.

Because Kelly was not even a student at Elwood, it is clear that no "special relationship" existed that would create a duty to protect under the first exception. Similarly, Elwood did not have a duty to protect Kelly under the second exception, the "state-created danger theory" of constitutional liability, because "[f]or such a duty to arise, the actions of the state must create a unique risk of harm to the plaintiff that is greater than the risk faced by the general public." *Davis,* 90 F.3d at 1351. In the *Dorothy J.* case, for example, it was alleged that the Arkansas Department of Human Services (DHS) and the Centers for Youth and Families owed a duty to protect the plaintiff and other students in the Little Rock School District (LRSD) from a state ward who had a history of violent and sexually assaultive behavior. The Eighth Circuit held that no constitutional duty existed, stating: "Plaintiff's general allegation that the Centers and DHS failed to make sure that LRSD would protect other students from Louis C.'s known assaultive behavior is the kind of 'traditional tort law' claim that the Supreme Court has refused to translate into a due process deprivation." *Id.,* 7 F.3d at 733. Thus, even if, as Shrum alleges, "[t]he conduct of Wade and Elwood created a foreseeable danger for students like Kelly" (second amended complaint, ¶ 26), this does not state a claim under § 1983.

Moreover, there is no evidence that Elwood affirmatively placed Kelly and other students at La Porte at risk. Wade's letter of recommendation that La Porte allegedly relied upon when it decided to hire Kluck is not shown to contain any affirmative misrepresentations.[5] Pursuant to the confidential settlement agreement (filing 124, Exhibit 13), Kluck and his counsel were permitted to remove certain material from his personnel file, but there is no evidence that La Porte officials ever reviewed the file. Attempts by La Porte officials to reach Wade by telephone to obtain more information about Kluck be-

5. The recommendation letter (filing 124, Exhibit 14), in its entirety, reads as follows:
   TO: Whom It May Concern
   FROM: Dave Wade
   RE: Mike Kluck
   Mr. Kluck has assisted Elwood Public Schools in a variety of activities and has been willing to help out in emergency situations. He has a good knowledge of his subject area and his coaching area. He has participated in numerous clinics.
   Mr. Kluck used a variety of teaching aids and made use of library resources. Outwardly he showed an interest in his students and the varied activities of the school. He arrived at school on time and was aware of and followed school channels and procedures; phone calls, bills, and invoices were handled properly.
   Mr. Kluck was responsible for Senior, Junior, and Freshman English, Junior High Study Skills, Journalism and year book sponsor. In addition he was head boys basketball and golf coach.

fore hiring him were unsuccessful (filing 124, Exhibit 18). The act of writing a neutral letter of recommendation, absent any affirmative legal duty on the part of Elwood to disclose all known information about Kluck,[6] simply is not a "state-created danger" of constitutional dimensions. *See Doe v. Wright, supra,* at 269 (citing as another reason for finding no due process violation the fact that the Helena Police Department did not have an affirmative duty under state law to recommend that Wright be decertified as a police officer).

In this respect, the present case is unlike *Doe v. Methacton School Dist.,* 880 F.Supp. 380 (E.D.Pa.1995), in which a § 1983 claim was brought against a school district that formerly employed a teacher who sexually abused a student at a different school. Officials at the Methacton School District were aware that the teacher was involved in a sexual relationship with a 12–year–old student, but they did not report the abuse as required by state law; instead, after the teacher admitted to a particular incident, he was permitted to

6. That information is summarized in a written reprimand that was prepared by Elwood's principal on October 27, 1993 (filing 124, Exhibit 6):

> This written reprimand is issued to Michael Kluck for unprofessional conduct while in the employ of the Elwood Public Schools.
>
> Numerous complaints have been received about your behavior. These include inappropriate remarks to female students, such as "you make me sweat" to a basketball player who was running laps; asking students what they had done on dates; telling students how nice they look in a tone of voice the students interpret as demeaning; the reading of material, such as most embarrassing experiences from Young Miss magazine aloud in class.
>
> Numerous complaints have been received concerning you looking at girls' breasts, behinds, and up their skirts. Many have said that in a face to face meeting, your eyes move to their breasts, or that you try to look at their breasts when they wear low cut outfits.
>
> Inappropriate touching of students is also a complaint. Many female students have related you massage their shoulders while helping them at their desks, sometimes the fingers getting below the collarbone in front, or, in one case, under the bra strap.
>
> You have carried on conversations with students or allowed students to discuss topics of a questionable nature in your classroom. A conversation about a trip to Lincoln and a trip to Hooters was related to several students, who indicated they heard the story during class time. You told the students you kept ordering pitchers of beer while in Hooters because the waitresses had on short tops and that when they reached for the pitcher, part of their breasts showed. Also, jokes of an inappropriate nature were told in your presence or to you during class time and you did not stop

> them, even laughing at them and encouraging their telling.
>
> Several students and staff members have expressed concern about the time you spend alone with several of the Junior High boys. Three boys accompanied you to the State Fair on a school night and were very late in coming to school the next day. There have been several reports of Junior High boys going to your house after school to play Nintendo and cards.
>
> The sum total of these charges is that you have acted in an unprofessional manner. These actions have seriously affected you [sic] ability to interact positively with students. Your credibility has been damaged with the students. Some students have expressed a fear of being alone with you in the classroom and they feel very uncomfortable being around you. This makes it difficult for your students to effectively learn English.
>
> I am continuing to investigate the charges and allegations against you. Further action may be taken against you, if warranted.

Additionally, an investigation of Kluck was conducted by the Gosper County Sheriff's Department in November 1992. The report that was filed by the investigating deputy (filing 124, Exhibit 3) reads as follows:

> I received a report of possible sexual assault by one of the teachers at the Elwood Public Schools. Allegedly this teacher was touching some of the girls in inappropriate places.
>
> After a thorough investigation, interviewing several students at the school, this complaint is unfounded. I found incidents where inappropriate things were said but no physical contact was made.
>
> This case is unfounded.
>
> End of report.

Wade was verbally informed of the report's content by the deputy (filing 124, Exhibit 1; Wade Deposition, 23:1–5).

resign for "personal reasons." [7] In the present case, there is no showing that Elwood possessed any information regarding unlawful conduct by Kluck that it was required to report.

Based on the evidence presented, Elwood's acts or omissions cannot "properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *See Collins v. City of Harker Heights,* 503 U.S. 115, 128, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992) (holding that the city's alleged failure to provide a safe place to work did not constitute a substantive due process violation). As explained recently by the Supreme Court in *County of Sacramento v. Lewis,* 523 U.S. 833, 118 S.Ct. 1708, 1717–18, 140 L.Ed.2d 1043 (1998):

> It should not be surprising that the constitutional concept of conscience-shocking duplicates no traditional category of common-law fault, but rather points clearly away from liability, or clearly toward it, only at the ends of the tort law's spectrum of culpability. Thus, we have made it clear that the due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm. In *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1160–61, 47 L.Ed.2d 405 (1976), for example, we explained that the Fourteenth Amendment is not a "font of tort law to be superimposed upon whatever system may already be administered by the States," and in *Daniels v. Williams,* 474 U.S. at 332, 106 S.Ct. at 665, we reaffirmed the point that "[o]ur Constitution deals with the large concerns of the governors and the governed, but it does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society."

Consequently, the Supreme Court held, "the substantive component of the Due Process Clause is violated by executive action only when it 'can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.'" *Id.,* 523 U.S. 833, 118 S.Ct. at 1717 (quoting *Collins*). Executive action challenges, according to the Court, "raise a particular need to preserve the constitutional proportions of constitutional claims, lest the Constitution be demoted to what we have called a font of tort law. Thus, in a due process challenge to executive action, the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Id.,* 523 U.S. 833, 118 S.Ct. at 1717, n. 8.

Shrum argues that the "shocks the conscience" standard is not applicable to Kelly's substantive due process claim because it involves a "fundamental" liberty interest. Instead, she argues, the applicable standard is whether Elwood infringed upon Kelly's constitutional rights without a compelling justification. In making this argu-

---

7. The district court in *Methacton,* however, did not reach the issue of whether the school district "affirmatively" placed the plaintiff in danger, since it determined that "there are no allegations in the Amended Complaint to indicate that the Methacton Defendants were aware that they had created a danger specifically to Baby Doe, as opposed to any other girl in the Philadelphia School District." *Id.,* 880 F.Supp. at 386. Although the district court for this reason found the "state-created danger theory" to be inapplicable, it held that the school district could be liable "for an alleged policy, practice or custom in place during [the teacher's] employment with the Methacton Defendants," and that the teacher "need not have been employed by them at the time of the abuse for him to be a state actor." *Id.,* 880 F.Supp. at 383 n. 2. As explained above, this result is inconsistent with the law in the Eighth Circuit, in particular, the Court of Appeals' decision in *Doe v. Wright, supra.* The *Methacton* court subsequently entered summary judgment in favor of the school district, finding that too much time had elapsed between the teacher's resignation and his abuse of the plaintiff, and that the plaintiff had not "presented evidence to suggest that MSD's termination procedures, even if constitutionally inadequate, encouraged or furthered [the teacher's] actual abuse of children." *Doe v. Methacton School Dist.,* 914 F.Supp. 101, 103 (E.D.Pa.1996), *aff'd,* 124 F.3d 185 (3rd Cir.1997).

ment, Shrum relies upon the following pronouncement by the Eighth Circuit:

> Substantive due process prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty. *United States v. Salerno,* 481 U.S. 739, 746, 107 S.Ct. 2095, 2101, 95 L.Ed.2d 697 (1987). There are two different ways of stating a substantive due process claim. First, the state violates substantive due process when it infringes "fundamental" liberty interests, without narrowly tailoring that interference to serve a compelling state interest. *Reno v. Flores,* 507 U.S. 292, 301–02, 113 S.Ct. 1439, 1446–47, 123 L.Ed.2d 1 (1993). Second, the state violates substantive due process when it engages in conduct that is so outrageous that it shocks the conscience or otherwise offends "judicial notions of fairness, [or is] offensive to human dignity." *Weimer v. Amen,* 870 F.2d 1400, 1405 (8th Cir.1989) (quotations omitted). We have been wary of extending substantive due process into new arenas. *Brown v. Nix,* 33 F.3d 951, 953 (8th Cir.1994).

*Weiler v. Purkett,* 137 F.3d 1047, 1051 (8th Cir.1998). *See also Riley v. St. Louis County,* 153 F.3d 627, 631 (8th Cir.1998), *cert. denied,* 525 U.S. 1178, 119 S.Ct. 1113, 143 L.Ed.2d 109 (1999).

The foregoing statement of the law, however, has been refined by the Supreme Court's holding in *Lewis* that a substantive due process challenge to executive action involves a "threshold question" of whether the action "shocks the conscience." The Court in *Lewis* drew a clear distinction between claims that are based on executive action and claims that are based on legislative action, stating:

> While due process protection in the substantive sense limits what the government may do in both its legislative, see, *e.g., Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), and its executive capacities, see, *e.g., Rochin v. California,* 342 U.S. 165,

72 S.Ct. 205, 96 L.Ed. 183 (1952), criteria to identify what is fatally arbitrary differ depending on whether it is legislation or a specific act of a governmental officer that is at issue.

> Our cases dealing with abusive executive action have repeatedly emphasized that only the most egregious official conduct can be said to be "arbitrary in the constitutional sense," *Collins v. Harker Heights,* 503 U.S. at 129, 112 S.Ct. at 1071, thereby recognizing the point made in different circumstances by Chief Justice Marshall, " 'that it is a *constitution* we are expounding,' " *Daniels v. Williams, supra,* at 332, 106 S.Ct. at 665 (quoting *M'Culloch v. Maryland,* 17 U.S. 316, 4 Wheat. 316, 407, 4 L.Ed. 579 (1819) (emphasis in original)).

*Lewis,* 523 U.S. 833, 118 S.Ct. at 1716.

Thus, a substantive due process claim is stated if legislative action infringes upon a fundamental liberty interest without narrowly tailoring that interference to serve a compelling state interest, but in order to maintain a claim for infringement of constitutional rights by executive action, it must be shown that the government's conduct "shocks the conscience." As summarized recently discussed by the Fourth Circuit in *Hawkins v. Freeman,* 195 F.3d 732, 738–39 (4th Cir.1999):

> Depending upon whether the claimed violation is by executive act or legislative enactment, different methods of judicial analysis are appropriate. *See Lewis,* 523 U.S. 833, 118 S.Ct. at 1716. This is so because there are different "criteria" for determining whether executive enactments are "fatally arbitrary," an essential element of any substantive due process claim. *Id.*

> In executive act cases, the issue of fatal arbitrariness should be addressed as a "threshold question," asking whether the challenged conduct was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Id.* 523 U.S. 833, 118 S.Ct. at 1717 n. 8. If it does not meet that test,

the claim fails on that account, with no need to inquire into the nature of the asserted liberty interest. If it does meet the threshold test of culpability, inquiry must turn to the nature of the asserted interest, hence to the level of protection to which it is entitled. *See id.* (footnote omitted)

If the claimed violation is by legislative enactment (either facially or as applied), analysis proceeds by a different two-step process that does not involve any threshold "conscience-shocking" inquiry. The first step in this process is to determine whether the claimed violation involves one of "those fundamental rights and liberties which are, objectively, 'deeply rooted in this Nation's history and tradition,'" *Glucksberg,* 521 U.S. at 720–21, 117 S.Ct. 2258, 138 L.Ed.2d 772 (quoting *Moore,* 431 U.S. at 503, 97 S.Ct. 1932, 52 L.Ed.2d 531), and " 'implicit in the concept of ordered liberty,' such that 'neither liberty nor justice would exist if they were sacrificed.'" *Id.* (quoting *Palko v. Connecticut,* 302 U.S. 319, 325, 326, 58 S.Ct. 149, 82 L.Ed. 288 (1937)). The next step depends for its nature upon the result of the first. If the asserted interest has been determined to be "fundamental," it is entitled in the second step to the protection of strict scrutiny judicial review of the challenged legislation. *See id.* at 721, 117 S.Ct. 2258, 138 L.Ed.2d 772 (observing that fundamental liberty interest is violated by legislation that infringes it unless the legislation is " 'narrowly tailored to serve a compelling state interest' ") (quoting *Reno v. Flores,* 507 U.S. 292, 302, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993)). If the interest is determined not to be "fundamental," it is entitled only to the protection of rational-basis judicial review. *See id.* at 728, 117 S.Ct. 2258, 521 U.S. 702, 117 S.Ct. 2258, 138 L.Ed.2d 772.

The challenged conduct in the present case involves executive action, namely, Wade's policy decision, which he allegedly made on behalf and with the approval of Elwood's school board, to enter into a confidential settlement agreement with Kluck. Although it also has been alleged that the settlement agreement was the result of a "custom" at Elwood, which arguably would be legislative in nature, the evidence does not support this allegation. The evidence also does not support a finding that Elwood's decision to accept Shrum's resignation on the terms outlined in the confidential settlement agreement was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Lewis,* 523 U.S. 833, 118 S.Ct. at 1717, n. 8.

Accordingly,

IT IS ORDERED that:

1) the defendants' motion for partial summary judgment (filing 89) is granted with respect to the Title IX claim, the second "cause of action" of the plaintiff's second amended complaint, and such claim is dismissed with prejudice as against the defendants Elwood and Wade;

2) the defendants' motion for partial summary judgment (filing 89) is granted with respect to the tort claim, the fourth "cause of action" of the plaintiff's second amended complaint, and such claim is dismissed without prejudice as against the defendants Elwood and Wade;

3) in all other respects the defendants' motion for partial summary judgment (filing 89) is denied without prejudice;

4) the defendant's motion for partial summary judgment (filing 43) is granted with respect to the § 1983 claim, the first "cause of action" of the plaintiff's second amended complaint, and such claim is dismissed with prejudice as against the defendants Elwood and Wade;

5) the court's memorandum and order of June 4, 1999 (filing 66) is vacated to the extent that it is inconsistent with this memorandum and order;

6) the plaintiff's motion to strike, or, in the alternative, to file a reply brief (filing 125) is denied; and

7) there being no just reason for delay.