William C. HENLEY

v.

**OCTORARA AREA SCHOOL DISTRICT, et al.**

Civ. A. No. 87–6855.

United States District Court, E.D. Pennsylvania.

Nov. 30, 1988.

William C. Henley, Cochranville, Pa., pro se.

Kean K. McDonald, LaBrum and Doak, Philadelphia, Pa., for Octorara Area School.

Robert G. Hanna, Jr., Marshall, Dennehy & Warner, Joseph Goldberg, Margolis, Edelstein, Philadelphia, Pa., for West Fallowfield Tp.

Douglas R. Widin, Cozen & O'Connor, Philadelphia, Pa., for Willis Bush.

Stephen Trout, Murphy, Taylor & Adams, Philadelphia, Pa., for Bonita Walton.

## MEMORANDUM OPINION
## AND ORDER

VANARTSDALEN, Senior District Judge.

On November 24, 1985, the plaintiff along with three other young men, two of whom were then high school students of Octorara Area High School, proceeded upon a bizarre night escapade of senseless wreckage upon, and damage to, Amish

farm wagons and growing crops, and the slaughter of at least two sheep by knifing or being run over by the truck used by the raiding party. The carcass of one slain sheep, with its throat slit, was dumped on the grounds of the Octorara Area High School where it would be in plain view of students entering the school. An investigation was commenced by the principal, Gary R. Cooper, and the vice-principal, William T. Iacone, of the high school. The matter was reported to the Chief of Police of West Fallowfield Township, the township in which Octorara Area High School was located, and also reported to the Pennsylvania Society for the Prevention of Cruelty to Animals (SPCA). Because the marauders wreaked havoc in portions of both Lancaster and Chester Counties, the Pennsylvania State Police entered into the investigation and eventually filed charges and arrested and prosecuted the plaintiff, Mr. Henley, as well as the other persons involved.

On July 26, 1986, Mr. Henley entered a plea of guilty in Chester County Court to two charges of criminal mischief, a charge of cruelty to animals in "wilfully and maliciously killing a domestic animal of another" and a charge of criminal conspiracy. In a signed plea agreement, Mr. Henley admitted that he, and the three companions, in Chester County damaged a farm wagon causing damage of $126.00, drove through a tobacco bed causing damage of about $100.00, and killed a sheep. Plaintiff was sentenced by the Chester County Court of Common Pleas to two years probation, two hundred hours community service and fined $400.00. At the time of entering the plea, charges of institutional vandalism, theft by unlawful taking, receiving stolen property and loitering and prowling were nol-prossed by the district attorney of Chester County as part of the plea bargain, upon Mr. Henley paying the costs of prosecution and restitution of $40 to another victim.

In Lancaster County, plaintiff was charged with only a summary offense of disorderly conduct for which he paid a fine and costs of $100.17. However, as part of the proceedings in Lancaster County, he paid approximately $650 in restitution, which together with the restitution made in Lancaster County by the other men involved, totaled approximately $2,600 restitution paid to Lancaster County victims.

The only explanation or motive offered by Mr. Henley for his activities are contained in his deposition where, at pages 25 and 30, he refers to the events as a "prank" for which all the participants had "a good laugh." Although he fully admits that he was along with the others, he contends that he was not an active participant in any of the wrongdoing. He alleges in the complaint that "at no time did Plaintiff commit offenses against the laws of the Commonwealth of Pennsylvania" (Complaint, ¶ 42), and that his plea of guilty was entered "under duress and coercion" and "upon advice of inadequate counsel." Complaint ¶ 37.

Plaintiff's complaint purports to assert constitutional claims for violation of his fourth, fifth, and fourteenth amendment rights. Constitutional claims in the complaint are based on 42 U.S.C. § 1983. Pendent state claims are also included. The named defendants are:

1. Octorara Area School District
2. West Fallowfield Township
3. Gary R. Cooper —Principal, Octorara Area High School
4. William T. Iacone —Vice Principal, Octorara Area High School
5. Ivan R. Stauffer —Vocational Agricultural Instructor of Octorara Area High School
6. Willis Bush, Jr. —Chairman of the Board of Township Supervisors of West Fallowfield Township
7. Bonita Walton —Secretary of West Fallowfield Township
8. Ronald Weir —Chief of Police of West Fallowfield Township
9. Stephen Walton —An individual involved in the night raid.

Cooper, Iacone, Stauffer, Bush, Bonita Walton, and Weir were all sued in their official and individual capacities. However, all individual federal and state claims against Cooper, Iacone, Stauffer, Bush, Bonita Walton, and Stephen Walton were voluntarily dismissed by stipulation dated August 26, 1988.[1] Ronald Weir, the Chief of Police, is the only defendant with claims remaining against him in his individual capacity.[2]

The pendent state claims stated by plaintiff are as follows: (1) obstruction of justice, (2) slander, (3) defamation, (4) false arrest, (5) abuse of process, (6) malicious prosecution, (7) intentional infliction of emotional distress, (8) invasion of privacy, (9) negligence, (10) gross negligence. Many of these state claims have been voluntarily dismissed as to particular defendants. Thus, it may be simpler to set forth the state claims that remain as to particular defendants. These state claims are brought against the following defendants in their official capacities:

1. Octorara Area School District—slander, negligence, and gross negligence.

2. West Fallowfield Township—slander, negligence and gross negligence.

3. Gary R. Cooper—slander, negligence, gross negligence, abuse of process, and intentional infliction of emotional distress.

4. William T. Iacone—slander, negligence, gross negligence, and intentional infliction of emotional distress.

5. Ronald Weir—slander, negligence, and gross negligence (These claims against Ronald Weir are also against him in his individual capacity).

The plaintiff and all remaining defendants have filed cross motions for summary judgment. Based on the entire record on file, there is no genuine issue of material fact in dispute and defendants are entitled to judgment as a matter of law. Plaintiff cannot establish that any of the remaining defendants committed any constitutional or state common-law tort against him that is actionable and alleged in the complaint. Judgment will therefore be entered in favor of all defendants and against the plaintiff on all claims and causes of action asserted in the complaint.

Plaintiff's basic claims appear to be the following: (1) he was guilty of no criminal offense and that the prosecution of him violated his constitutional civil rights; (2) defendants conspired to falsely accuse and prosecute him; (3) the investigating officials violated his constitutional rights by improperly questioning suspects and other individuals about his sexual conduct and possible involvement in some type of devil worship cult or organization; (4) defendants unconstitutionally precluded him from coming onto school property and in publishing this prohibition violated his civil rights.

■ Mr. Henley pleaded guilty to various criminal offenses in Chester County and paid a fine on the summary disorderly conduct charge in Lancaster County. It is hornbook law that he cannot now challenge those convictions by a collateral attack in this civil action. *Drum v. Nasuti,* 648 F.Supp. 888 (E.D.Pa.1986), *aff'd,* 831 F.2d 286 (3d Cir.1987). Plaintiff does not assert that he was denied a "full and fair opportunity" to litigate his fourth amendment and due process claims in state court as it related to his allegedly wrongful arrest and detention. *See Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). *Cf. Anela v. City of Wildwood,* 790 F.2d 1063 (3d Cir.1986); *see American Home Products Corp. v. Johnson & Johnson,* 668 F.Supp. 446 (E.D.Pa.1987). As long as that conviction remains of record, plaintiff is conclusively foreclosed from contending that he was not guilty or, as he alleges, that at no time did he commit any offense. He may not contend in this action that, as to the offenses for which he pleaded guilty, the plea was coerced or obtained upon advice of ineffective counsel. Plaintiff also contends that he was "unreasonably and

---

1. Since only individual claims were brought against Stephen Walton, no claims remain against him.

2. These are the constitutional claims stated above and three pendent state claims of slander, negligence, and gross negligence.

excessively arrested and detained without just or probable cause." Complaint ¶ 46. However, there is no evidence that the arrest itself lacked probable cause or was accompanied by any unreasonable force as prohibited by either state or federal law. In addition, the prosecution and the actual arrest were conducted by Pennsylvania State Police who are not named as defendants. The record clearly establishes that the case was carefully investigated by the State Police, that a warrant for plaintiff's arrest was obtained from a district justice, and that there was probable cause for his arrest.

Mr. Henley apparently contends that because certain of the charges including institutional vandalism, theft by unlawful taking, receiving stolen property, and loitering and prowling were nol-prossed by the district attorney as a part of the plea bargain, he may continue to assert constitutional violations as to the processing of those charges. The fact that criminal charges are filed by police and those charges do not terminate in a conviction does not thereby establish any constitutional violation. In this case, even if there was a lack of probable cause for such charges (and clearly the record, including Mr. Henley's admissions in the complaint and his deposition establish probable cause), he could not successfully claim that he was arrested without probable cause. *See Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). At the time that he was arrested on certain charges that were ultimately nol-prossed, he was also arrested on the same warrant on charges to which he eventually pleaded guilty. There is no evidence that the investigation, arrest, prosecution and eventual nol-prossing of certain of the charges violated any due process right of Mr. Henley. There is no viable basis for claiming any action for damages under 42 U.S.C. § 1983 arising out of his arrest and prosecution on charges of institutional vandalism and the other charges that were nol-prossed.

Plaintiff also claims that the defendants conspired to falsely accuse and prosecute him. Plaintiff's complaint in particular asserts that Principal Cooper and Vice–Principal Iacone bore a personal grudge against him and that this caused them to begin an investigation of him. Plaintiff alleges that on or about November 26, 1985, secretary Walton and Stephen Walton (Stephen Walton was one of the four persons involved in the sheep incident) met with Cooper and Iacone "in order to formulate and execute a plan with the intention of depriving Plaintiff of equal protection of the law and in violation of the fourteenth amendment." Complaint ¶ 19. Defendants Cooper and Iacone have denied that they at any time conspired, between themselves or with any other persons, to deny plaintiff his constitutional rights. *See* Defendant Octorara's Answer to Motion for Summary Judgment. In the face of the denial of this conspiracy, plaintiff has not put forward any evidence to prove that such a conspiracy existed. Plaintiff's bald assertions and speculative claims are insufficient to survive a motion for summary judgment. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Philadelphia Printing Pressmen's Union No. 16 v. International Paper Co.,* 648 F.2d 900, 903–904 (3d Cir.1981) (bald assertions of speculative considerations without supportive evidence in the record do not create a genuine issue of material fact).

Principal Cooper and Vice–Principal Iacone began their investigation in this matter when they discovered a mutilated sheep carcass on school grounds. They immediately removed the carcass and began an investigation to find out who was responsible for the incident. Cooper and Iacone not only had the right to conduct such an investigation but I believe that it was their duty to do so given that they are responsible for the welfare of students entrusted to their care. After conducting an inquiry, Cooper and Iacone referred the matter to the proper authorities.

Plaintiff alleges that this inquiry itself was wrongful and was done only to harass him. Again, this bald assertion by plaintiff does not comport with the facts on the record. The inquiry was commenced only after the sheep carcass was deposited on school grounds. The inquiry made by Coo-

per and Iacone not only had a sound basis in fact when it began, but was later corroborated by the state police investigation, plaintiff's own admission of being among the wrongdoers, and his subsequent guilty plea to actual offenses. Plaintiff asserts that Principal Cooper interviewed female students and "demanded these female students supply false and damaging statements about Plaintiff...." Complaint ¶ 20. Yet, plaintiff does not produce any evidence from these students or Principal Cooper that supports his allegations. Principal Cooper's deposition does not support this coercion claim, and, in fact, states that two female students approached him with information about the sheep incident. *See* Deposition of Cooper at 28. Further, plaintiff has not produced evidence from anyone that corroborates his assertions of coercion of female students and other students during the inquiry. Again, without such evidence, plaintiff is left standing on his bald assertion.

Plaintiff has produced no evidence that secretary Walton conspired to deprive him of his constitutional rights. Likewise, plaintiff has not produced any evidence that vocational instructor Ivan R. Stauffer and Chairman Bush deprived him of any constitutional right.

 Above I have dealt with plaintiff's constitutional claims on the merits; however, there is an alternative basis for dismissing plaintiff's constitutional claims against Cooper, Iacone, Stauffer, Bush, and Bonita Walton, as well as the Octorara Area School District and West Fallowfield Township. Plaintiff is suing all the individual parties stated above in their official capacities under 42 U.S.C. § 1983. Therefore, in effect, all of plaintiff's claims against these persons in their official capacities are against the township and/or school district. Thus, plaintiff is required to show that the alleged injuries resulted from conduct undertaken pursuant to a custom or policy of the township or the school district. This requirement was first stated in *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Under *Monell,* local government units may be liable only when "the action that is alleged to be unconstitutional implements or executes a policy, statement, ordinance, regulation, or decision officially and promulgated by that body's officers." A municipality cannot be made liable by application of the doctrine of *respondeat superior.* Thus, plaintiff must prove (1) the existence of a custom or policy of the township or school district which is of such long standing to have force of law, and (2) that one of the township or school district employees violated plaintiff's civil rights while acting pursuant to this custom or policy. *See Sambrick v. Borough of Norristown,* 639 F.Supp. 1351 (E.D.Pa.1986). The plaintiff does not put forward any evidence that a policy or custom existed pursuant to which his civil rights were violated.[3]

The final and apparently principal contention of Mr. Henley is that he was unconstitutionally "banned" from coming onto school property. By letter dated December 18, 1985, signed by the vice-principal of Octorara Area High School, William T. Iacone, and mailed to Mr. Henley, he was precluded from coming onto school property. The body of the letter stated in full:

Dear Mr. Henley:

This is to advise you that you are no longer permitted on the school grounds of Octorara Area School District, effective December 18, 1985. This decision was made jointly by Dr. Cooper and me and is directly related to your involvement with depositing a sheep on school property the evening of November 24, 1985.

Should you enter school property, you will be considered trespassing and reported to the police.

An identical letter was at the same time addressed to Philip Thompson, the other person involved in the activities of November 24, 1985, who was not a high school

---

**3.** It is questionable whether plaintiff's complaint even articulates a factual basis in support of his allegations that would have been sufficient to withstand a 12(b)(6) motion. *Id.; Colburn v. Upper Darby Township,* 838 F.2d 663, 672–73 (3d Cir.1988).

student. A copy of each of these letters was sent to the Chief of Police, Ronald Weir, who posted the letters on a bulletin board in the police office.

Mr. Henley's right to come onto public school property would, of course, be no greater than that of the public generally. The school authorities could impose reasonable restrictions upon members of the public who were not students from coming onto the school grounds. The only apparent constitutional claim that could be asserted would be lack of equal protection by reason of Mr. Henley being denied a privilege that applied to members of the general public.

■ The equal protection clause of the Constitution does not preclude public school authorities from making reasonable classifications and enforcing reasonable conditions to privileges to come onto or use public school property. Reasonable classifications that do not infringe on other recognized rights such as freedom of speech and are not invidious classifications such as those based on race, political views, or religious affiliations, are constitutionally permissible.[4]

■ In this case, the school authorities had the right to exclude Mr. Henley and Mr. Thompson from coming onto the school property, considering that these men had engaged in criminal activities involving school students including a criminal conspiracy with Octorara Area High School students. Certainly the classification excluding Mr. Henley and Mr. Thompson had a rational basis and was reasonable. The right to come onto the school property was not such a right as to require any sort of a due process hearing before making the classification that excluded Mr. Henley. *See Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct 893, 47 L.Ed.2d 18 (1976).

Application of the *Mathews v. Eldridge* balancing test to this situation indicates that plaintiff was not denied due process. Plaintiff was banned from school district property and as a result he complains that

he could not attend athletic events at Octorara Area High School. This private interest is relatively small. *See Fenton v. Stear*, 423 F.Supp. 767 (W.D.Pa.1976). The ban letter was issued only after Principal Cooper and Vice–Principal Iacone investigated the sheep incident and after plaintiff's father attempted to explain to Cooper his son's position. Imposing any greater procedural or administrative burdens on the defendants before banning a non-student would be fiscally and administratively burdensome. Also, it would undermine the ability of school officials to take prompt action to protect the student body from harmful and disruptive behavior by non-students. *See Grayned v. Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972) (there exists a compelling interest in having an undisrupted school session conducive to student learning); *cf. New Jersey v. T.L.O.*, 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985) (special needs of the school environment recognized by the Court); *see Wood v. Strickland*, 420 U.S. 308, 326, 95 S.Ct. 992, 1003, 43 L.Ed.2d 214 (1975) (The system of public education in this Nation relies necessarily upon the judgment of school administrators and school board members.).

Mr. Henley, in a brief filed on the cross motions for summary judgment, for the first time suggests that because the school board holds its meetings at the high school, he would be prohibited by the ban from attending school board meetings where other members of the public could attend. There is no evidence that he ever sought to attend such a meeting and was excluded or precluded from attending. There is no evidence that the school board would interpret the ban as applying to school board meetings. Also, the school principal, who issued the letter that put the ban into effect, obviously could not and did not affect in any way who, among the public, could attend school board meetings. There is no evidence that the school board played any part in issuing the letter that prohibited

---

**4.** Plaintiff makes no claim that the school's prohibition was directed toward regulating his rights to free speech based on the content of his

views. *Cf. Widmar v. Vincent,* 454 U.S. 263, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981).

Mr. Henley from coming onto school property. I conclude that the letter prohibiting Mr. Henley from coming onto school property did not violate any constitutional rights of the plaintiff.

■ Plaintiff continues to assert claims against Police Chief Ronald Weir in his individual and official capacity. However, precisely what plaintiff claims Chief Weir did to violate his rights is unclear. Plaintiff states that Chief Weir "participated in the unreasonable and excessive arrest of Plaintiff with the intention of depriving Plaintiff of the equal protection of the laws in violation of the Fourteenth Amendment." Complaint ¶ 32. Plaintiff also alleges that Chief Weir provided false evidence to the investigator for the state police. Complaint ¶ 38. Again, plaintiff produces no evidence to support his allegations. Chief Weir interviewed Henley, Hoover, Thompson, Walton, Vice–Principal Iacone, and also spoke with a female who told Chief Weir that Henley had raped her, and that the rape was done as part of the "SOS" club. See Deposition of Weir at 33. Weir turned all the information he gathered over to the state police. Chief Weir did not arrest plaintiff. Rather, plaintiff was arrested by State Trooper O'Brien. Chief Weir accompanied O'Brien for the purpose of identifying Henley. Id. at 39–40. Thus, Chief Weir's "participation" in the arrest was not unlawful. As was stated earlier, the arrest was conducted pursuant to a valid arrest warrant. In sum, plaintiff cannot show any evidence that Chief Weir violated his constitutional rights.

As to the pendent state claims against Chief Weir and all other defendants, I will adjudicate those state claims since the federal and state claims "derive from a common nucleus of operative fact." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). Exercising jurisdiction over the pendent state claims will serve the policy of judicial economy and will promote fairness and convenience to the litigants. *See Sambrick*, 639 F.Supp. 1351, 1355–56 (E.D.Pa.1986).

■ As to Chief Weir, plaintiff has not provided any evidence to support his claims of slander, negligence or gross negligence. The posting on the police office bulletin board of copies of the letters from Vice–Principal Iacone that prohibited Mr. Henley and Mr. Thompson from entering school property was neither slanderous nor libelous. They were factually accurate statements. They were posted on the bulletin board for legitimate police information and purposes. Therefore, those pendent state claims against defendant Weir will be dismissed.

■ Plaintiff has provided no evidence to support his pendent state claims against Principal Cooper and Vice–Principal Iacone.[5] Also, since the claims against Cooper and Iacone are against them in their official capacities, the claims are barred by the Political Subdivision Tort Claims Act, 42 Pa.Cons.Stat.Ann. §§ 8541–8553 (1982).[6] To the extent that plaintiff alleges that he was harmed by negligent acts of the township employees, they are barred by the Act.[7] To the extent that plaintiff alleges intentional acts, they are not within any exception stated in section 8542. *See Acker v. Spangler*, 92 Pa.Commw. 616, 500 A.2d 206 (1985). Plaintiff's state claims against the Octorara Area School District

---

5. The pendent claims that remain against Cooper are: slander, abuse of process, negligence, gross negligence and intentional infliction of emotional distress. The same pendent claims remain against Iacone with the exception of a claim for abuse of process.

6. The Political Subdivision Tort Claims Act also provides an alternative basis for dismissing the state claims against Ronald Weir in his official capacity as Police Chief.

7. Also, plaintiff's broad allegation that defendant township or school district is liable for failure to properly train, supervise, and retain employees cannot support a claim for municipal liability. *See Colburn v. Upper Darby Township*, 838 F.2d 663, 672–73 (3d Cir.1988) (failure to train police insufficient to support municipal liability for constitutional violation). There is no evidence that improper or inadequate training or supervision in any way caused any of the actions about which plaintiff complains.

and West Fallowfield Township are likewise barred by the Act.[8]

I conclude on the basis of the entire record that there is no issue of material fact in dispute that could establish any of the asserted causes of action against any of the defendants. Summary judgment will be entered in defendants' favor.

### ORDER

Upon consideration of the cross motions for summary judgment, for the reasons set forth in the foregoing opinion, judgment is hereby entered in favor of all remaining defendants and against the plaintiff on all remaining causes of action asserted by the plaintiff against the remaining defendants.

---

**8.** The pendent claims that remained against the school district and township were for slander, negligence, and gross negligence.